UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CAMPBELL,<br><br>                        Plaintiff,<br><br>v.<br><br>CUBESMART, L.P.; TRACEY HEYWOOD; KEIM MICUCCI; FRANKIE LILES; ARTHUR SALAIZ; BRYAN HARRIS; ERIN DIMARCO; and DOES 1 through 100, inclusive,<br>                        Defendants. | Case No.: 24-cv-02282-AJB-VET<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION TO REMAND;**<br><br>**(2) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**(Doc. Nos. 7, 9)** |

Before the Court are Plaintiff Stephanie Campbell's motion to remand (Doc. No. 9), and Defendant CubeSmart, L.P.'s motion to compel arbitration and stay action (Doc. No. 7). The matters have been fully briefed. (Doc. Nos. 11–14.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matters suitable for determination on the papers and without oral argument. Accordingly, the Court hereby **VACATES** the hearing currently set for **February 27, 2025**. For the reasons set forth herein, the Court **DENIES** Plaintiff's

motion to remand, and **GRANTS** CubeSmart's motion to compel arbitration and stay action.

## I. BACKGROUND

CubeSmart is a real estate company focused on ownership, operation, acquisition, and development of self-storage facilities throughout the United States. (Declaration of John Hueber ("Hueber Decl."), Doc. No. 7-3, ¶ 3.)

Plaintiff was previously employed by CubeSmart beginning March 2022 as a Retail Sales Associate. (Complaint ("Compl."), Doc. No. 1-4. ¶ 18.) Plaintiff's employment with CubeSmart terminated approximately two years later in April 2022. (*Id.* ¶ 26.)

As part of CubeSmart's onboarding process, new hires receive an Arbitration Agreement which must be reviewed and acknowledged by the new hire prior to starting employment. (Hueber Decl. ¶ 4.) The Arbitration Agreement states in relevant part:

> I . . . hereby agree to utilize CubeSmart L.P.'s Formal Dispute Resolution Program to pursue any pre-employment, employment or post-employment dispute, claim, or controversy . . . against CubeSmart L.P. . . . regarding any alleged unlawful act regarding my application for employment, employment or the termination of my employment which could have otherwise been brought before an appropriate court including, but not limited to . . . the Americans with Disabilities Act; The Fair Labor Standards Act; . . . any state anti-discrimination statutes; wage and hour laws; retaliation statutes, equal pay laws; any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance. . . . Except as expressly stated in "Claims Not Covered by the Agreement," the Company and Employee agree to arbitrate before a neutral arbitrator any and all existing or future Covered Claims between or among them, pursuant to this Agreement and CUBESMART's Dispute Resolution Rules.

(Doc. No. 7-7 at 2.)

Plaintiff initiated this action by filing her Complaint on October 28, 2024, in the Superior Court of California, County of San Diego. (*See generally* Compl.) The Complaint contains fifteen causes of action, asserting claims for (1) disability harassment in violation of the Fair Employment and Housing Act, Cal. Gov't Code § 12940, *et seq.* ("FEHA"); (2)

disability discrimination in violation of FEHA; (3) disability retaliation in violation of FEHA; (4) failure to engage in the interactive process in violation of FEHA; (5) failure to provide reasonable accommodations in violation of FEHA; (6) whistleblower retaliation in violation of California Labor Code § 1102.5; (7) failure to pay wages for missed meal breaks in violation of California Labor Code §§ 512 and 226.7; (8) failure to provide rest break premium wages in violation of California Labor Code § 226.7; (9) failure to furnish compliant wage statements and maintain accurate pay records in violation of California Labor Code §§ 226, 1174, and 1198; (10) violation of California Labor Code § 351; (11) conversion; (12) waiting time penalties; (13) violation of California Business and Professions Code § 17200, *et seq.* for unfair business practices; (14) wrongful termination and retaliation in violation of public policy; and (15) failure to pay overtime wages. (*Id.*)

On December 6, 2024, CubeSmart filed its Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Notice of Removal ("NOR"), Doc. No. 1.) The instant motions follow.

## II. MOTION TO REMAND

### A. Legal Standard

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). In a case originally brought in state court, a defendant may remove the action to federal court if there is federal subject matter jurisdiction. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

"Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction." *Audo v. Ford Motor Co.*, No.: 3:18-cv-00320-L-KSC, 2018 WL 3323244, at *1 (S.D. Cal. July 6, 2018) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Therefore, the "burden of establishing that removal is proper" always lies with the defendant. *Gaus*, 980 F.2d at 566. If there is any

doubt as to the propriety of removal, the court shall reject federal subject matter jurisdiction. *Id.*; *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) ("If a district court determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court.").

Federal subject matter jurisdiction may arise based on federal question or diversity jurisdiction. 28 U.S.C. § 1331, 1332(a). Diversity jurisdiction requires complete diversity between plaintiffs and defendants. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). An individual is deemed to be a citizen of the state in which he or she is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Further, to satisfy § 1332, the matter in controversy must exceed the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

**B.    Discussion**

As a threshold issue, there is no dispute between the parties regarding the amount in controversy. In its NOR, CubeSmart asserts the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff does not contest this. (NOR at 7, 12–20; *see generally* Doc. No. 9.)

The main point of dispute is whether there is complete diversity between the parties; namely, between Plaintiff and Defendants Tracey Heywood, Keim Micucci, Frankie Liles, Arthur Salaiz, Bryan Harris, and Erin DiMarco (collectively, "Individual Defendants"). (Doc. No. 9-1 at 2.) Plaintiff also moves and requests the Court to award attorney fees and costs, and for sanctions against CubeSmart and its attorney of record, asserting CubeSmart removed the instant case in bad faith. (*Id.* at 2, 6–8.) In its NOR, CubeSmart asserts the Individual Defendants' citizenship does not prohibit removal because they had not yet been served at the time of removal. (NOR at 10.)

CubeSmart argues the motion must be denied because, at the time of removal, complete diversity of citizenship existed, and removal was proper. (Doc. No. 13 at 2.) Specifically, CubeSmart asserts Plaintiff did not serve any of the Individual Defendants with the Summons and Complaint until December 14, 2024, a week after CubeSmart's

removal, at which time Frankie Liles was served. (*Id.* at 3.) The remaining Individual Defendants still have not been served. (*Id.*) CubeSmart also argues the Individual Defendants' citizenship does not defeat diversity because they are sham defendants. (*Id.* at 7.)

The parties do not dispute there is complete diversity between Plaintiff and CubeSmart. Plaintiff is a citizen of California, while CubeSmart is incorporated in Delaware with its principal place of business and headquarters in Pennsylvania. (NOR at 9, 11.) Plaintiff contends the Court must consider all of the named defendants in an action to determine whether removal is appropriate under the forum defendant rule and not whether the forum defendants have been served. (Doc. No. 9-1 at 5.)

The forum defendant rule, set forth in 28 U.S.C. § 1441(b), "imposes a limitation on actions removed pursuant to diversity jurisdiction: 'such action[s] shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Spencer v. U.S. Dist. Ct. N.D. Cal. (Altec Indus., Inc.)*, 393 F.3d 867, 870 (9th Cir. 2004) (quoting 28 U.S.C. § 1441(b)). "[T]he presence of a local defendant at the time removal is sought bars removal." *Id.* This "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

Plaintiff maintains the Individual Defendants are California citizens, and therefore forum defendants. (Doc. No. 9-1 at 5.) However, because the Individual Defendants were not served at the time of removal, the removal was proper. 28 U.S.C § 1441(b) (referring to "properly joined and served" defendants); *Spencer*, 393 F.3d at 867 (post-removal joinder of a forum defendant does not necessitate remand); *Laucella v. Lowe's Home Centers, LLC*, No.: 24-cv-00068-JAH-DEB, 2024 WL 1716589, at *2 (S.D. Cal. Apr. 22, 2024) (denying motion to remand where the defendant's removal was a "snap removal"); *Allen v. Eli Lilly & Co.*, No. 10cv141 L(CAB), 2010 WL 3489366, at *2 (S.D. Cal. Sept. 2, 2010) ("The forum defendant rule is inapplicable if the removal is effected by an out-of-state defendant before any local defendant is served."); *Haseko Homes, Inc. v.*

*Underwriters Inc. Co.*, No. 09cv1613-L(AJB), 2010 WL 358531, at *1–2 (S.D. Cal. Jan. 22, 2010) (denying motion to remand where one non-forum defendant removed the action before the second defendant, a citizen of the forum, was served); *Fobb v. Uber Techs., Inc.*, No. 21-cv-07778-HSG, 2022 WL 620336, at *2 (N.D. Cal. Mar. 3, 2022) (same) (collecting cases); *see also Higginbottom v. Dexcom, Inc.*, No.: 24-cv-0195-WQH-BLM, 2024 WL 4547017, at *2–4 (S.D. Cal. Oct. 22, 2024) (denying motion for certification of interlocutory appeal, finding there was no "substantial ground for difference of opinion" on the subject of snap removal).

Without serious dispute, the requirements for diversity jurisdiction are otherwise met. *See* 28 U.S.C. § 1332(a). CubeSmart, incorporated in Delaware with its principal place of business in Pennsylvania, is diverse from Plaintiff, a citizen of California. CubeSmart's NOR was procedurally proper and includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2004); (NOR at 12–20). And Plaintiff does not credibly assert that the amount in controversy is less than $75,000 or otherwise argue that the diversity requirements are not met. Accordingly, the motion to remand and Plaintiff's request for award attorney fees and costs, and for sanctions, are **DENIED**. The Court thus does not reach the issue of whether the Individual Defendants are "sham" defendants.

### III. MOTION TO COMPEL ARBITRATION AND STAY CASE

#### A. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Accordingly, the court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists and, if it does,

(2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989)). Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

**B.   Discussion**

CubeSmart argues Plaintiff must arbitrate her claims because she signed a valid arbitration agreement as part of her employment contract that encompasses all of her claims. Plaintiff counters she is not bound by the Agreement because (1) there is no valid contract between the parties, and (2) even if there is, the unconscionability of the Agreement makes it unenforceable. The Court address each issue in turn.

### 1.   Validity of Agreement to Arbitrate

The Court's first task when presented with a motion to compel arbitration is "to determine whether the parties have in fact agreed to arbitrate the dispute." *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1947, 1505 (2012). The moving party bears the burden of proving by a preponderance of the evidence that a valid agreement exists and that the dispute is covered by the agreement. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997). In determining the validity of the agreement, courts apply ordinary state-law contract principles. *See Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002).

Plaintiff contends no valid agreement exists because, despite evidence of the general acknowledgment and being on notice of the Arbitration Agreement, there is no evidence Plaintiff agreed to or signed the Agreement itself. (Doc. No. 11 at 2.) Specifically, no

electronic signature or identifying stamp exists on the face of the Arbitration Agreement. (*Id.*) Moreover, Plaintiff refutes CubeSmart's assertion that even if the Court does not accept Plaintiff's electronic acknowledgment of the Arbitration Agreement, she is bound by its terms because of her implied consent through continued employment. (*Id.* at 6–8.)

      A party moving to compel arbitration meets its initial burden by attaching a copy of a purported agreement to arbitrate along with the nonmoving party's signature. *Espejo v. So. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). If the nonmoving party challenges the authenticity of her signature, the moving party is then required to establish its authenticity by a preponderance of the evidence. *Id.* ("Once Espejo challenged the validity of that signature in his opposition, defendants were then required to establish by a preponderance of the evidence that the signature was authentic."). The moving party may submit such evidence in its moving papers or on reply when authenticity is challenged. *Id.*; *see also Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 847–48 (2014).

      Under California Civil Code Section 1633.7, an electronic signature "has the same legal effect as a handwritten signature." *Ruiz*, 232 Cal. App. 4th at 843. "Still, any writing must be authenticated before the writing . . . may be received in evidence." *Id.* (citing Cal. Evid. Code § 1401). Pursuant to California Civil Code Section 1633.9(a), "an electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Courts have previously held that the moving party meets this burden by submitting a declaration detailing the company's "security precautions regarding transmission and use of an applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the [agreement]." *See Espejo*, 246 Cal. App. 4th at 1062.

      Plaintiff's only counter is that she "do[es] not recall ever being given an arbitration agreement to review and accept," (Declaration of Stephanie Campbell ("Campbell Decl."), Doc. No. 11-1, ¶ 3), and that her electronic acknowledgment is not on the Agreement itself,

(Doc. No. 11 at 2). However, CubeSmart's Learning Management System ("LMS") Administrator, Mr. John Hueber, states in his declaration that "[a]t or around the time of hire, all CubeSmart employees are required to complete an electronic onboarding process through its LMS, which includes receiving, reviewing, and acknowledging receipt and acceptance of the Arbitration Agreement prior to starting employment with CubeSmart." (Hueber Decl. ¶ 4.) When an individual is hired as a new CubeSmart employee, a system-generated profile in LMS is automatically created and an automated system-generated email is sent to the store email address where the new employee is assigned to work. (*Id.* ¶ 7.) The welcome email is addressed to the new hire individually and contains a unique username and a default password for that individual only. (*Id.* ¶ 7.) The new employee is then instructed to use those credentials to log into LMS for the first time, and thereafter the employee is prompted to change the password. (*Id.*) The employee cannot proceed any further within LMS without changing the password, and no one other than the employee knows or has access to the new password they create. (*Id.*)

After logging into the LMS, Plaintiff would then be presented with a screen that states "Formal Dispute Resolution Program and Arbitration Agreement Acknowledgment." (*Id.* ¶ 11.) From there, the employee must click the "Next" button, and then would be presented with instructions to click the "View Agreement" button, which would open the Arbitration Agreement on their screen for review. (*Id.*) In order to acknowledge that they had read and understood the Arbitration Agreement, the employee would then have to click a button which states as follows: "I acknowledge that I have received and understood CubeSmart's Formal Dispute Resolution Program and Arbitration Agreement." (*Id.*; Doc. No. 7-5 at 4–5.) This acknowledgment must be completed before the employee can move onto the next step in the process. (Hueber Decl. ¶ 11.) Once the acknowledgment is confirmed, the employee clicks the "Continue" button to complete the process. (*Id.*; Doc. No. 7-5 at 6.) Once a course is completed, an electronic record is generated within CubeSmart's LMS confirming receipt and completion of this acknowledgment, which is also sent to the employee via email and a copy is kept as part

of their personnel file. (Hueber Decl. ¶¶ 12, 16.) A course completion record is maintained within CubeSmart's LMS and kept in the course of CubeSmart's regularly conducted business activity. (*Id.* ¶ 16.) Plaintiff's Online Course Activities transcript, an electronic record and report of all the trainings and acknowledgments assigned to and completed by Plaintiff, shows she completed the 2022 Arbitration Agreement acknowledgment on March 19, 2022, at 5:47 p.m. (Hueber Decl. ¶ 18; Doc. No. 7-8 at 2.) The Court finds that, Plaintiff's statement notwithstanding, CubeSmart has shown by a preponderance of the evidence that Plaintiff electronically consented to the Arbitration Agreement.

Plaintiff further asserts the parties' Agreement is unenforceable because it was not signed by CubeSmart. (Doc. No. 11 at 5.) However, under California law, "[t]he writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." *See Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 176–77 (2015). "Evidence confirming the existence of an agreement to arbitrate, despite an unsigned agreement, can be based, for example, on 'conduct from which one could imply either ratification or implied acceptance of such a provision.'" *Id.* at 176 (quoting *Banner Ent., Inc. v. Superior Ct.*, 62 Cal. App. 4th 348, 361 (1998)).

Here, CubeSmart authored the Agreement and the terms of the Agreement evidence an intent to be bound by the Agreement: "The parties waive the right to a trial by a judge or a jury in a court of the matters covered by this formal dispute resolution program." (Doc. No. 7-7 at 2.) Further, CubeSmart promptly moved to compel arbitration and stay proceedings. (Doc. No. 7.) Such evidence confirms the existence of an agreement to arbitrate. *See Serafin*, 235 Cal. App. 4th at 176–77.

### 2. Enforceability of Agreement to Arbitrate

"The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal citation and quotation marks omitted).

Plaintiff argues the Agreement should not be enforced because "Plaintiff was surprised by Defendant's insistence on forcing upon her a waiver of her right to a jury trial" and that she "would not have been given a meaningful choice in the negotiation of the terms of the agreement." (Doc. No. 11 at 8–9.) Here, Plaintiff fails to argue *both* substantive *and* procedural unconscionability, and thus the Agreement must be enforced. Regardless, Plaintiff's arguments under procedural unconscionability fail.

"Procedural unconscionability analysis focuses on oppression or surprise." *Negrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quotation marks omitted) (quoting *Flores v. Transamerica Home First, Inc.*, 93 Cal. App. 4th 846, 853 (2007)). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Id.* (quotation marks omitted).

First, while Plaintiff asserts the Agreement was unconscionable due to surprise, she does not assert that the agreed-upon terms were hidden by CubeSmart. Thus, Plaintiff fails to plead procedural unconscionability due to surprise.

Moreover, Plaintiff argues the Agreement is a contract of adhesion. A contract of adhesion "is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981). However, "California courts recognize that adhesion only establishes a minimal degree of procedural unconscionability." *Hodsdon v. DirecTV, LLC*, No. 12-cv-02827-JSW, 2012 WL 5464615, at *5 (N.D. Cal. Nov. 8, 2012); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 957 (N.D. Cal. 2015); *Gatton v. T-Mobile, USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). Plaintiff does not assert the Agreement was presented on a take-it-or-leave-it basis, or that she attempted to negotiate its terms. Even had Plaintiff presented evidence that the Agreement was a condition of her employment, this would, at most, constitute a minimal amount of procedural unconscionability.

Accordingly, Plaintiff has failed to meet her burden to show the Agreement was procedurally or substantively unconscionable. Moreover, Plaintiff's remaining arguments as to why the Agreement cannot be enforced have been considered by the Court but have no basis in law, and the Court finds them unpersuasive.[1] Based on the foregoing, the Court **GRANTS** CubeSmart's motion to compel arbitration and for stay of the action pending arbitration.

### 3. Stay of Action

Section 3 of the FAA provides the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. CubeSmart has made such a request. (Doc. 7-1 at 22–23.) Accordingly, the Court **STAYS** this action pending completion of arbitration.

## IV. CONCLUSION

For the reasons stated herein:

1. Plaintiff's motion to remand is **DENIED**, (Doc. No. 9);
2. CubeSmart's motion to compel arbitration is **GRANTED**, (Doc. No. 7);
3. Pursuant to the FAA, the Court **STAYS** the judicial proceedings pending the outcome of any arbitration. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024);
4. The Parties are ordered to file a joint status report with this Court, detailing the progress of the arbitration in 180 days from the date of this order;

///

///

---

[1] For example, Plaintiff asserts the Agreement cannot be enforceable because CubeSmart's policies and procedures are directed for "New Hires," but that Plaintiff was determined to be a General Manager shortly after hire. (Doc. No. 11 at 4.) However, Plaintiff makes no showing that her position was excluded from the Agreement to which she electronically agreed.

5. The Parties are further required to notify the Court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision;

6. Because the action is now stayed pending the completion of arbitration, all dates currently on the calendar in this case are **VACATED**.

**IT IS SO ORDERED**.

Dated: January 21, 2025

Hon. Anthony J. Battaglia
United States District Judge